*In re* DETENTION OF CHARLES DEAN (The People of the State of Illinois, Petitioner-Appellee, v. Charles Dean, Respondent-Appellant).

Third District    No. 3—01—1034

Opinion filed March 14, 2003.

Richard Whitman, of Stansell, Whitman & Baber, of Monmouth, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and William L. Browers and Anne S. Bagby, Assistant Attorneys General, of counsel), for the People.

PRESIDING JUSTICE McDADE delivered the opinion of the court:

A jury found the respondent, Charles Dean, to be a sexually violent person pursuant to the Sexually Violent Persons Commitment Act (Illinois Act) (725 ILCS 207/1 *et seq.* (West 2000)). The trial court committed him to the Department of Human Services until he no longer is a sexually violent person. On appeal, the respondent argues that the Illinois Act unconstitutionally denies his due process rights because it does not require the jury to determine that he lacks control over his behavior. We affirm.

## BACKGROUND

In 1988, the respondent pled guilty to two counts of aggravated criminal sexual assault of his first wife's nine-year-old niece. In 1992, he pled guilty to one count of aggravated criminal sexual assault of his second wife's five-year-old daughter. On February 15, 2001, before he was scheduled to be released from prison for the 1992 offense, the State petitioned the circuit court to commit the respondent as a "sexually violent person" under the Illinois Act (725 ILCS 207/40 (West 2000)). The court held a jury trial on the petition. At the conclusion of the trial, the jury found the respondent to be a "sexually violent person." The court then ordered that he be civilly committed under the Illinois Act. The respondent appealed.

## ANALYSIS

The respondent argues that the Illinois Act violates the United States Supreme Court's holding in *Kansas v. Crane*, 534 U.S. 407, 151 L. Ed. 2d 856, 122 S. Ct. 867 (2002) (*Crane US*). In *Crane US*, the Court considered a Kansas act that contains language similar to the language in the Illinois Act. The respondent contends that in *Crane US*, the Court required the jury to find that a person lacked control of his behavior in order to civilly commit the person under the Kansas act. The respondent submits that the Illinois Act violates due process rights by failing to require such a finding. We disagree with the respondent's reading of *Crane US*.

■ The constitutionality of a statute is a question of law, which we review *de novo. People v. Garcia*, 199 Ill. 2d 401, 770 N.E.2d 208 (2002).

■ The Illinois Act states that if the jury finds a person to be a "sexually violent person," the court shall order that the person be civilly committed. 725 ILCS 207/35(f) (West 2000). A "sexually violent

person" is a person who has been convicted of a sexually violent offense and who is dangerous because he suffers from a "mental disorder" that makes it substantially probable that he will engage in acts of sexual violence. 725 ILCS 207/5(f) (West 2000). A "mental disorder" is a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence. 725 ILCS 207/5(b) (West 2000).

A determination of the constitutionality of the Illinois Act requires a discussion of the case law that preceded *Crane US*. In *Kansas v. Hendricks*, 521 U.S. 346, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997), the Court considered the language in the Kansas act, which is similar to language in the Illinois Act. Under the Kansas act, a person could be civilly committed if the person was found to be a "sexually violent predator." A "sexually violent predator" was defined as:

> " '[A]ny person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in the predatory acts of sexual violence.' [Citation.]
>
> A 'mental abnormality' was defined, in turn, as a 'congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others.' [Citation.]" *Hendricks*, 521 U.S. at 352, 138 L. Ed. 2d at 509, 117 S. Ct. at 2077.

The issue in *Hendricks* was whether the Kansas act's "precommitment condition of a 'mental abnormality' did not satisfy what the [Kansas Supreme Court] perceived to be the 'substantive' due process requirement that involuntary civil commitment must be predicated on a finding of 'mental illness.' " *Hendricks*, 521 U.S. at 350, 138 L. Ed. 2d at 508, 117 S. Ct. at 2076. The Supreme Court held that the Kansas act's "definition of 'mental abnormality' satisfies 'substantive' due process requirements." *Hendricks*, 521 U.S. at 356, 138 L. Ed. 2d at 511, 117 S. Ct. at 2079. In *dicta*, the *Hendricks* Court explained that it previously had upheld statutes that provided for the civil commitment of a person who (1) is unable to control his behavior and (2) poses a danger either to himself or to others.

In *In re Care & Treatment of Crane*, 269 Kan. 578, 7 P.3d 285 (2000) (*Crane KS*), the Kansas Supreme Court then interpreted *Hendricks* to mean that a jury must make a "lack of control" finding in order to commit the person. The United States Supreme Court granted *certiorari* to consider *Crane KS* and clarified the Court's ruling from *Hendricks*.

In *Crane US*, the State of Kansas argued that the Kansas Supreme Court's ruling in *Crane KS* misinterpreted *Hendricks*. The State of Kansas contended that the Kansas court read *Hendricks* to require the State to prove that the person to be committed was completely unable to control his behavior. The *Crane US* Court agreed that such a reading of *Hendricks* was too rigid. The *Crane US* Court, however, also rejected the State of Kansas's argument that a "lack of control" determination was completely unnecessary. The Court reiterated that *Hendricks* had upheld the Kansas act as constitutional. The Court noted that the Kansas act's definition of "mental abnormality" met both elements of the *Hendricks* two-pronged test, *i.e.*, that the person (1) was unable to control his behavior, and (2) posed a danger to himself or others. The Court then vacated the Kansas Supreme Court's judgment and remanded the matter. *Crane US*, 534 U.S. 407, 151 L. Ed. 2d 856, 122 S. Ct. 867.

In *In re Detention of Varner*, 198 Ill. 2d 78, 759 N.E.2d 560 (2001), the Illinois Supreme Court rejected the Kansas Supreme Court's interpretation of *Hendricks* in *Crane KS*, but on different grounds than stated by the United States Supreme Court in *Crane US*. Recently, the United States Supreme Court granted *certiorari* for the purpose of vacating *Varner* and remanding the matter to the Illinois Supreme Court in light of *Crane US*. *Varner v. Illinois*, No. 01—9286 (U.S. October 7, 2002).

■ The Illinois Appellate Court, Fourth District, recently held in *People v. Hancock*, 329 Ill. App. 3d 367, 771 N.E.2d 459 (2002), that *Crane US* does not require a separate jury determination that a respondent lacks volitional control in order to commit the respondent under the Illinois Act. The *Hancock* court noted that the pertinent sections of the Illinois Act were "very similar" to the corresponding sections of the Kansas act that were upheld in *Hendricks*. *Hancock*, 329 Ill. App. 3d at 373, 771 N.E.2d at 464. We agree with the *Hancock* court that if the Kansas act's definition of a "mental abnormality" passes the two-part test announced in *Hendricks* and affirmed in *Crane US*, the Illinois Act's definition of a "mental disorder" also passes that test. Therefore, we rule as a matter of law that the Illinois Act does not violate due process rights by failing to require a separate jury determination that the respondent lacked control over his behavior.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Warren County circuit court.

Affirmed.

LYTTON and HOLDRIDGE, JJ., concur.