No. 2--02--1213

_________________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________________________

In re
 COMMITMENT OF ) Appeal from the Circuit Court

EUGENE BUSHONG ) of Du Page County.

)

) No. 98--MR--381

)

(The People of the State of ) Honorable

Illinois, Petitioner-Appellee, ) Edward R. Duncan, Jr.,

v. Eugene Bushong, Respondent-Appellant). ) Judge, Presiding.

_________________________________________________________________________________

JUSTICE BYRNE delivered the opinion of the court:

The trial court found respondent, Eugene Bushong, to be a sexually violent person pursuant to the Sexually Violent Persons Commitment Act (SVPA) (725 ILCS 207/1 
et
 
seq
. (West 2000)) and ordered him committed to a Department of Human Services (DHS) treatment facility indefinitely.  Respondent did not appeal the adjudication or his commitment to DHS.  Instead, respondent petitioned alternatively for conditional release (725 ILCS 207/60 (West 2000)) or discharge (725 ILCS 207/65 (West 2000)).  The trial court denied the petition, and respondent timely appeals.

On appeal, respondent alternatively asks us to vacate the trial court's finding of sexual violence and the dispositional order, or to remand the cause for a new hearing on his petition for conditional release.  Respondent argues that (1) his due process rights were violated at the original commitment hearing because the SVPA did not require the trial court to expressly find that his mental disorder makes it difficult for him to control his urge to commit sexually violent acts; (2) he was denied his right to equal protection at the conditional release hearing because the SVPA requires the State to prove its case by only clear and convincing evidence rather than by proof beyond a reasonable doubt, as is required by the Sexually Dangerous Persons Act (SDPA) (725 ILCS 205/1.01 
et
 
seq
. (West 2000)); and (3) he received ineffective assistance of counsel at the conditional release hearing when his attorney did not (a) challenge the admissibility of actuarial instruments that the State's expert used to assess respondent's risk of recidivism or (b) move to exclude the testimony of the State's expert as a sanction for the DHS treatment providers' refusal to discuss the case with the defense expert.  We reject respondent's arguments and affirm the judgment.

FACTS

Following a hearing on February 23, 1999, the trial court found beyond a reasonable doubt that respondent was a sexually violent person.  The court found that respondent had been convicted of aggravated criminal sexual abuse in 1986 and 1991; the offenses involved boys who were less than 17 years old; and respondent suffered from the mental disorder of paraphilia, not otherwise specified, attracted to males, nonexclusive type.  The court found that respondent was dangerous because the "mental disorder makes it substantially probable that [respondent] will engage in acts of sexual violence."  Following a dispositional hearing on August 16, 1999, the court ordered respondent committed to DHS for care and treatment.

On December 12, 2000, defense counsel filed a petition seeking respondent's conditional release.  The petition alleged that respondent's time would be better spent in employment and outpatient treatment.  The court heard the petition more than 18 months later, on June 24, 2002.  Dr. Leavitt, the State's expert, testified that he conducted 6-, 18-, and 30-month evaluations in which he interviewed respondent, reviewed his treatment progress, administered psychological tests, and updated his risk analysis.  Dr. Leavitt reported that respondent had been charged with seven sex offenses over 40 years.  Respondent was convicted six times and showed no evidence of stopping his criminal sexual behavior.

Dr. Leavitt stated that the DHS treatment providers were treating respondent for paraphilia, sexually attracted to males, nonexclusive type.  Respondent also exhibited narcissistic personality disorder.  His treatment consisted of a five-phase core sex-offender-specific program, as well as an individual plan.  Respondent was assigned a case manager and a primary therapist.  Respondent had shown some progress by participating in treatment and admitting to some of his past sexual offenses.  Respondent first participated in a disclosure group because he initially resisted treatment.  At the time of the hearing, respondent was in the second phase of the program, which focused on accepting responsibility for his sexual deviance.  Before progressing to phase three, respondent submitted to a polygraph test, but his results were inconclusive because he responded erratically.  Following the polygraph test, respondent admitted to abusing five additional victims.  This delay in disclosure caused his treatment providers to doubt whether respondent could discuss his past honestly and openly.  The providers also expressed concern that respondent could not focus and participate in group treatment.

Dr. Leavitt administered the Multiphasic Sex Inventory, which showed that respondent remained defensive but was also becoming increasingly open about his past behavior.  The Millon Clinical Multiaxial Test showed that respondent felt depressed, insecure, and personally inadequate.  Dr. Leavitt's most recent interview indicated that respondent had a more positive outlook and was open about the progress he had made.  Respondent indicated that his risk of reoffending had decreased because he was more comfortable with his sexuality.

Dr. Leavitt administered several actuarial instruments to assess respondent's potential for recidivism.  The Static-99, the Hanson-Bussiere meta-analysis, and the Hanson and Harris instruments showed that the following significant dynamic factors must be addressed: respondent's deviant sexual interests, cognitive disorders, and resistance to personal change.  Dr. Leavitt opined that respondent's progress in treatment did not reduce his risk of reoffending.

Dr. Leavitt testified that the DHS program was the only inpatient sex-offender-specific program in Illinois.  Respondent's treatment at the time of the hearing included 10 to 12 hours of weekly group therapy, as well as other treatment.  If respondent were granted conditional release, he would likely participate in weekly 1½- to 2-hour treatments.  Respondent was 60 years old at the time of the hearing, and his age was not necessarily a mitigating factor, because the research is inconclusive as to whether recidivism decreases over time.  Dr. Leavitt also believed that respondent's erectile dysfunction necessitated a second plethysmograph analysis.

Respondent told Dr. Leavitt that his behavior was caused by the sexual confusion with which he had struggled for many years.  However, Dr. Leavitt believed that respondent was minimizing the intensity and severity of his sexual deviance and that respondent's 40-year pattern of behavior suggested that his paraphilic urges would not dissipate simply upon his acceptance of his homosexuality.

Respondent testified that, if he were granted conditional release, he would reside with his 85-year-old mother, who lived two blocks from respondent's sister and brother-in-law.  His sister's parish pastor also offered to assist respondent.  Respondent agreed to cooperate with any treatment requirements, but he was unaware of what types of outpatient programs were available, because DHS barred him from corresponding with those facilities.  Respondent did not direct his sister to investigate treatment alternatives, because he expected DHS to coordinate his treatment by providing information.  Respondent admitted that he disclosed the additional victims after submitting to the first polygraph test, and he insisted that he repeatedly volunteered to retake the test.

Psychologist Hollida Wakefield, respondent's expert, testified that she evaluated respondent in April 2001 and reviewed his DHS records.  She administered two psychological tests as well as three actuarial instruments: the Minnesota risk assessment tool that was used at the original commitment hearing, the Static-99, and the Sex Offender Risk Appraisal Guide.  Respondent scored in the high risk category on the Static-99 because it gives more weight to offenses against boys.  The actuarial instruments incorporate documentation and cannot be completed with only an interview.  Wakefield could not assign a percentage to the likelihood that respondent would reoffend, because the instruments are unreliable and useful only as aids.  She stated that polygraphs and plethysmographs are also unreliable.

Like Dr. Leavitt, Wakefield diagnosed respondent with paraphilia, not otherwise specified, sexually attracted to males, nonexclusive type.  Wakefield opined that respondent's pattern of offending against adolescent males manifested his struggle to acknowledge his homosexuality.  However, while living in California, respondent came to terms with his sexual identity and had "mainly adult" sexual partners.  There was no evidence that respondent had reoffended since 1991.  Wakefield testified that paraphilia is a mental disorder that "affects" a person's ability to control his deviant sexual behavior, but "not everyone acts on their impulses."

A DHS attorney barred Wakefield from discussing the case with respondent's treatment staff.  However, Wakefield was permitted to review the staff's progress notes, which indicated that respondent was in phase three of the program, even though his polygraph was inconclusive.  Wakefield believed that the test was inconclusive because respondent gets anxious easily and was unsure of how many boys he had victimized.  Wakefield opined that there is no research that associates a delay in disclosure with an increased risk of recidivism.  Wakefield admitted that she did not know that respondent had victimized his stepson.

Wakefield recommended a community-based treatment program in a secure half-way house because the DHS program was too confrontational.  Wakefield recommended that respondent find a job and reintegrate into the community after he progressed further.  The program should be structured and include electronic monitoring or other security measures at the start of the release period to reduce respondent's risk of reoffending.  Wakefield was uncertain whether such an outpatient program was available in the area, but she believed that respondent had "hit the ceiling" in the DHS program.

In denying the petition for conditional release, the trial court noted that both Dr. Leavitt and Wakefield had diagnosed respondent with paraphilia, sexually attracted to males, nonexclusive type, as well as a personality disorder.  Respondent had a long history of committing sexually violent acts, victimizing 13 young adolescent men.  Although respondent had exhibited some progress in treatment, "significant and serious concerns" still needed to be addressed.  Respondent showed an inability or unwillingness to acknowledge the severity of his sexually deviant interests or recognize their close connection to his identity and lifestyle.  Moreover, respondent remained deceptive and defensive, and he lost his focus in treatment, which raised questions about his commitment to treatment.  The trial court also mentioned Dr. Leavitt's use of two actuarial instruments, the Static-99 and the Hanson-Bussiere meta-analysis, that predicted a strong likelihood that respondent would reoffend.  The court doubted that an adequate outpatient program was available.  Finally, the court noted that, in the future, it would order the DHS treatment providers to discuss the case with respondent's expert, because "it would seem that there would be no real psychologist-patient privilege between a person who has been sentenced and a State clinical psychologist."

ANALYSIS

On appeal, respondent argues that he is entitled to either an outright reversal of the original finding of sexual violence or a reversal of the denial of his petition for conditional release and a remand for a new hearing on the petition.  Respondent argues that (1) his due process rights were violated at the original commitment hearing because the SVPA did not require the trial court to find that his mental disorder makes it difficult for him to control his urge to commit sexually violent acts; (2) he was denied his right to equal protection at the conditional release hearing because the SVPA requires the State to prove its case by only clear and convincing evidence rather than by proof beyond a reasonable doubt, as is required by the SDPA; and (3) he received ineffective assistance of counsel at the conditional release hearing when his attorney did not move to exclude (a) the State's use of actuarial instruments that allegedly did not comply with 
Frye v. United States
, 293 F. 1013 (D.C. Cir.1923), and (b) all of the testimony of the State's expert as a sanction for the DHS treatment providers' refusal to discuss the case with the defense expert.

1.  Due Process at Commitment Hearing

We initially address respondent's claim that, under 
Kansas v. Crane
, 534 U.S. 407, 151 L. Ed. 2d 856, 122 S. Ct. 867 (2002), he was denied his right to due process at the original commitment hearing because the SVPA did not require the trial court to find that he could not control his urge to commit acts of sexual violence.  The State alternatively contends that respondent waived this issue when he failed to appeal from the original adjudication of sexual violence and that the SVPA, as followed by the trial court, complies with 
Crane
.  Acknowledging the waiver, respondent replies that we should nevertheless consider his argument because serious liberty interests are at stake and because the Post-Conviction Hearing Act (725 ILCS 5/122--1 
et seq
. (West 2002)) is unavailable to him as a person governed by the SVPA.

When a respondent petitions for conditional release, he waives an issue when he fails to make a timely objection in the trial court, but a reviewing court may consider the issue as plain error.  
In re Detention of Traynoff
, 338 Ill. App. 3d 949, 963 (2003), citing 
People v. Thurow
, 203 Ill. 2d 352, 363 (2003)
.  In such a situation, " '[i]t is the defendant rather than the [State] who bears the burden of persuasion with respect to prejudice.' "  
Thurow
, 203 Ill. 2d at 363, quoting 
United States v. Olano
, 507 U.S. 725, 734, 123 L. Ed. 2d 508, 520, 113 S. Ct. 1770, 1778 (1993).  Plain error is a limited and narrow exception to the general waiver rule, and it is invoked only where the evidence is closely balanced or where the alleged error is so substantial that it deprived the defendant of a fair trial.  
Traynoff
, 338 Ill. App. 3d at 963.  In this case, we decline to address respondent's claim that he was denied his right to due process at the original commitment hearing because he has not established that the evidence introduced at that hearing was closely balanced or that he was substantially prejudiced.  See 
Traynoff
, 338 Ill. App. 3d at 963.

2.  Equal Protection at Conditional Release Hearing

We next address respondent's argument that the SVPA violates the equal protection clause of the federal constitution (U.S. Const., amend. XIV) because it affords fewer rights than are granted to individuals committed pursuant to the SDPA.  Specifically, respondent compares the State's burden of proof when individuals petition for release under the two acts.  In 
People v. Masterson
, 207 Ill. 2d 305 (2003), our supreme court reviewed 
de
 
novo
 the respondent's challenge to the constitutionality of the SDPA under 
Crane
.  
Masterson
, 207 Ill. 2d at 318.  In accordance with 
Masterson
, we apply 
de
 
novo
 review to respondent's similar constitutional challenge to the SVPA.  A statute is presumed constitutional, and the party challenging the validity of a statute has the burden of clearly establishing that it is unconstitutional.  Because statutes enjoy a strong presumption of constitutionality, courts must construe statutes to uphold their constitutionality whenever reasonably possible.  
Masterson
, 207 Ill. 2d at 318.

When a sexually dangerous person petitions for discharge under the recovery provision of the SDPA (725 ILCS 205/9 (West 2000)), the State bears the burden of proving beyond a reasonable doubt that the individual is still sexually dangerous.  
People v. Trainor
, 196 Ill. 2d 318, 335 (2001).  However, when a sexually violent person petitions for discharge (725 ILCS 207/65(a)(2) (West 2000)) or conditional release (725 ILCS 207/60(d) (West 2000)) under the SVPA, the State must prove its case by only clear and convincing evidence.

The constitutional right to equal protection of the law guarantees that the State must treat similarly situated persons in a similar manner.  
People v. Runge
, 346 Ill. App. 3d 500, 508 (2004).  Although the equal protection clause does not preclude the State from enacting legislation that draws distinctions between different categories of people, it does prohibit the government from according different treatment to persons who have been placed by a statute into different classes on the basis of criteria wholly unrelated to the purpose of the legislation.  
People v. Fisher
, 184 Ill. 2d 441, 450 (1998).  If a statutory classification neither impinges on a fundamental right nor is based on a "suspect" class, a court will use the "rational basis" test to review the statute's validity.  
Runge
, 346 Ill. App. 3d at 508, quoting 
People v. Kimbrough
, 163 Ill. 2d 231, 237 (1994).  In considering prior equal protection challenges to the SVPA, our supreme court has applied the rational basis test.  
In re Detention of Samuelson
, 189 Ill. 2d 548, 562 (2000).  Under this test, a statutory classification will be upheld if it bears a rational relationship to a legitimate state interest.  
Runge
, 346 Ill. App. 3d at 508-09.

Defendant does not claim that a fundamental right is at issue or that he is a member of a "suspect" class.  Therefore, the statutory provision at issue will be declared constitutional if there is any rational basis for differentiating between persons committed to DHS under the SVPA and those committed to DHS for other reasons.  See 
Runge
, 346 Ill. App. 3d at 509.

Respondent cites 
Masterson
 for the proposition that persons committed under the SVPA and the SDPA are similarly situated.  Respondent relies upon the 
Masterson
 court's broad statement that "Illinois' SDPA and SVPA are obviously closely related in subject and proximity, and they are undoubtedly governed by one spirit and a single policy."  
Masterson
, 207 Ill. 2d at 329.  Respondent takes this quotation out of context.  The 
Masterson
 court used the SVPA as an aid in construing the phrase "mental disorder" under the SDPA.  The court did not consider the equal protection claim at issue here or even compare the constitutional protections afforded persons committed under the two acts.

However, in 
Runge
, the Third District Appellate Court considered an equal protection claim very similar to the one raised here.  In 
Runge
, the defendant argued that section 31--6(b--1) of the Criminal Code of 1961 (720 ILCS 5/31--6(b--1) (West 2000)) unfairly criminalized escape by persons committed to DHS under the SVPA but not persons committed to DHS for other reasons.  In rejecting the defendant's argument, the court agreed with several other holdings of the appellate court that persons committed under the SVPA and the SDPA are not similarly situated:

"A person committed to DHS or awaiting commitment under the [SVPA] has been previously convicted of a sexually violent offense or found not guilty of such offense by reason of insanity.  725 ILCS 207/15(b) (West 2000).  In this respect, such persons are not similarly situated to persons committed under the [SDPA] (725 ILCS 205/1.01 
et
 
seq
. (West 2000)), who have been charged but not convicted, or to other residents of DHS, whose involuntary commitment does not follow a criminal conviction for a sexually violent offense.  See 
In re Ottinger
, 333 Ill. App. 3d 114, 775 N.E.2d 203 (2002);  
People v. Hancock
, 329 Ill. App. 3d 367, 771 N.E.2d 459 (2002);  
In re Detention of Bailey
, 317 Ill. App. 3d 1072, 740 N.E.2d 1146 (2000); 
In re Detention of Varner
, 315 Ill. App. 3d 626, 734 N.E.2d 226  (2000), 
aff'd
, 207 Ill. 2d 425, 800 N.E.2d 794 (2003);  
People v. Winterhalter
, 313 Ill. App. 3d 972, 730 N.E.2d 1158 (2000).

The legislature could have rationally determined that the class of persons whose sexually violent offenses had been established beyond a reasonable doubt in prior criminal proceedings posed a potentially greater menace to society if they escaped DHS custody than escapees who had been committed to DHS pursuant to other civil proceedings.  The heightened need to protect the public from sexually violent escapees is a legitimate state interest justifying the imposition of criminal liability when they escape."  
Runge
, 346 Ill. App. 3d at 509.

As in the instance of criminalizing escape by a sexually violent person, the legislature could have rationally determined that persons who have already been adjudicated sexually violent beyond a reasonable doubt pose a greater risk to society than those whose sexual dangerousness has not been established in a prior criminal proceeding.  Moreover, there is a legitimate state interest in protecting the public from sexually violent persons.  
Runge
, 346 Ill. App. 3d at 509.  Therefore, in agreement with 
Runge
 and the cases cited therein, we also hold that persons committed under the SVPA and the SDPA are not similarly situated and that sections 65(a)(2) and 60(d) of the SVPA do not violate equal protection guarantees by allowing the State to prove its case for continued commitment by only clear and convincing evidence.

3.  Ineffective Assistance of Counsel at Conditional Discharge Hearing

Finally, we address respondent's claim that he was denied the effective assistance of counsel at the conditional discharge hearing when his attorney failed to (a) challenge the admissibility of the actuarial instruments that the State's expert used to assess respondent's risk of recidivism or (b) move to exclude the testimony of the State's expert, as a sanction for the DHS treatment providers' refusal to discuss the case with the defense expert.  The State responds that, even if respondent's due process rights were violated, we should nevertheless affirm the judgment because he was not prejudiced.  Although the State does not argue the point, we conclude that respondent was not prejudiced by the use of the actuarial instruments because, as a matter of trial strategy, he presented evidence that his own expert relied upon them in reaching her opinion.  We further conclude that, although his counsel erred in procedurally defaulting on the meritorious issue of the DHS employees' refusal to discuss the case, counsel was not ineffective, because the State's evidence was so overwhelming that respondent was not prejudiced by his counsel's performance.

Persons committed under the SVPA are entitled to effective assistance of counsel, measured by the 
Strickland
 standard (see 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)).  
In re Detention of Erbe
, 344 Ill. App. 3d 350, 362 (2003); 
People v. Swanson
, 335 Ill. App. 3d 117, 126-127 (2002).  To establish ineffective assistance of counsel, a defendant must first demonstrate that his counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the [s]ixth [a]mendment."  
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.  In so doing, a defendant must overcome the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence.  
Strickland
, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.  Second, a defendant must demonstrate a reasonable probability that, but for defense counsel's deficient performance, the result of the proceeding would have been different.  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  A defendant will prevail on a claim of ineffective assistance of counsel only if he satisfies both prongs of the 
Strickland
 test.  
People v. Coleman
, 183 Ill. 2d 366, 397 (1998).

a.  Actuarial Instruments

Respondent argues that his counsel rendered ineffective assistance when, before the conditional discharge hearing, he failed to move for a hearing under 
Frye v. United States
, 293 F. 1013 (D.C. Cir.1923), to determine the admissibility of certain actuarial instruments that the State's expert used to predict the likelihood that respondent would reoffend.  In forming his opinion that respondent would likely reoffend, Dr. Leavitt used the Static-99, the Hanson-Bussiere meta-analysis, and the Hanson and Harris instruments.  The State responds that the instruments are not subject to a 
Frye
 analysis, and that even if 
Frye
 applies, the State established the instruments' admissibility.

In Illinois, the admission of expert testimony is governed by the 
Frye
 standard:  whether the methodology or scientific principle upon which the opinion is based is sufficiently established to have gained general acceptance in the particular field in which it belongs.  
Donaldson v. Central Illinois Public Service Co.
, 199 Ill. 2d 63, 77 (2002).  General acceptance of a methodology does not require universal acceptance, and the 
Frye
 test applies only if the scientific principle, technique, or test offered by the expert to support his or her conclusion is "new" or "novel."  
Donaldson
, 199 Ill. 2d at 78-79.  General acceptance and reliability are not two separate questions.  The determination of the reliability of an expert's methodology is naturally subsumed by the inquiry into its general acceptance in the scientific community.  
Donaldson
, 199 Ill. 2d at 81.

This court has held that actuarial instruments such as the ones at issue in this case are scientific evidence that are admissible only if they pass the 
Frye
 test.  
In re Commitment of Lourash
, 347 Ill. App. 3d 680, 687 (2004) (Hanson-Bussiere meta-analysis and MnSOST-R); 
Traynoff
, 338 Ill. App. 3d at 964 (RRASOR, Static-99, and MnSOST-R); 
People v. Taylor
, 335 Ill. App. 3d 965, 977 (2002) (RRASOR and Static-99).  In 
Taylor
, we concluded that the actuarial instruments, which supplemented and went beyond the experts' "clinical judgment, training, and expertise," qualified as scientific methodology that is admissible only if generally accepted in the relevant scientific community.  
Taylor
, 335 Ill. App. 3d at 977.  We held that the State had not met its burden (
Taylor
, 335 Ill. App. 3d at 978), but we acknowledged that in a future case, the State might be able to prove that the actuarial instruments meet the 
Frye
 criteria.  
Taylor
, 335 Ill. App. 3d at 980.

We decline the State's invitation to reconsider 
Taylor
 and its progeny and to hold that the actuarial instruments are not subject to the 
Frye
 test.  The Third District and at least one panel of the Fourth District have adopted our reasoning (see 
In re Detention of Hargett
, 338 Ill. App. 3d 669, 675 (2003) (Third District); 
In re Detention of Bolton
, 343 Ill. App. 3d 1223, 1229 (2003) (Fourth District)).  However, other panels of the Fourth District have departed from 
Taylor
.  See 
In re Commitment of Stevens
, 345 Ill. App. 3d 1050 (2004); 
In re Detention of Erbe
, 344 Ill. App. 3d 350 (2003).  In the interest of 
stare
 
decisis
, we adhere to our earlier holdings, noting that the supreme court is poised to resolve the split in authority (see 
In re Commitment of Simons
, No. 5--02--0579 (2003) (unpublished order under Supreme Court Rule 23), 
appeal allowed
, 206 Ill. 2d 622 (2003)).

Respondent argues that the State failed to meet its burden of proving that the Static-99, Hanson-Bussiere meta-analysis, and Hanson and Harris instruments had achieved general acceptance in the scientific community.  However, we need not consider the issue because Wakefield, respondent's own expert, used these instruments in her analysis and included them in her report and testimony before the court.  The State's introduction of evidence of these instruments and respondent's use of the same type of evidence is not plain error or 
per
 
se
 reversible.  See 
In re Detention of Swope
, 343 Ill. App. 3d 152, 158 (2003), 
appeal allowed
, 207 Ill. 2d 603 (2004).  Therefore, we conclude that respondent's reliance upon these instruments was a matter of trial strategy and that he may not now argue that they were inadmissible.

b.  Access to DHS Employees

Our decision on the actuarial instruments issue does not end the inquiry regarding alleged ineffective assistance of counsel.  While preparing for the conditional release hearing, Dr. Leavitt, the State's expert, consulted with the DHS staff who treated respondent.  However, when Wakefield, respondent's expert, sought her own consultation, a DHS attorney informed her that DHS policy barred the staff from speaking with her.  Defense counsel brought the matter to the trial court's attention but did not move to exclude Dr. Leavitt's testimony as a sanction, because the trial court suggested that it would consider only permitting counsel to depose the staff rather than ordering them to speak directly with Wakefield.

Dr. Leavitt and Wakefield were previously involved in a similar situation, which this court addressed in 
Swope
.  In that case, two DHS employees refused to speak with Wakefield and her associate, Ralph Underwager, in connection with a conditional release proceeding under the SVPA.  The trial court permitted defense counsel to depose the employees, and Wakefield and Underwager used the testimony in forming their opinion of the case.  The experts noted in their report that the deposition testimony was inadequate because " 'an attorney cannot be expected to know what questions to ask and what issues need to be explored more fully.' "  
Swope
, 343 Ill. App. 3d at 154.

We concluded that Swope was denied a "level playing field" and that his due process rights were violated when the trial court permitted the DHS employees to decline to talk with Swope's experts after agreeing to talk with the State's expert.  
Swope
, 343 Ill. App. 3d at 155.  However, we declined to reverse the judgment, because Swope failed to petition the trial court for any remedy, such as sanctions, or move 
in
 
limine
 to bar the State's use of evidence obtained from the conversations with the DHS workers.  By deposing the employees, Swope acquiesced in a procedure that "ultimately may have short-circuited his own right to due process."  
Swope
, 343 Ill. App. 3d at 156.  This case is distinguishable from 
Swope
 in that defense counsel declined to depose the employees before the hearing and respondent claims on appeal that his counsel was ineffective for procedurally defaulting on the due process issue.  By declining to depose the DHS employees before the hearing and by arguing on appeal that counsel was ineffective, respondent has preserved his meritorious due process claim in a way that Swope did not.

We conclude that defense counsel's conduct was not a matter of trial strategy because, as respondent argues, only the State enjoyed the strategic advantage of "direct feedback from members of [respondent's] multi-disciplinary treatment team."  
Swope
, 343 Ill. App. 3d at 155.  Moreover, Dr. Leavitt testified that in forming his opinion, he relied heavily upon the treatment providers' assessment of respondent's progress.  Wakefield testified that she would have preferred to speak with the staff because she was "not quite sure" what all of the group therapies entailed.

Nevertheless, we agree with the State that the error was harmless beyond a reasonable doubt because the evidence of respondent's propensity for sexual violence was overwhelming.  Both Wakefield and Dr. Leavitt diagnosed respondent with paraphilia, not otherwise specified, sexually attracted to males, and both experts stated that respondent scored very high on the actuarial instruments.  Also, respondent admitted to Dr. Leavitt that he had engaged in a 40-year pattern of abusing young males.  Furthermore, Wakefield's recommendation of an outpatient treatment plan was based not on a belief that respondent was ready to return to society but rather on her opinion that he had maximized the benefit he could expect from his long stay at the DHS facility.  A conditional discharge is not warranted merely because a sexually violent person has been committed for an extended period.

For the preceding reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and KAPALA, JJ., concur.