THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERALD J. O'NEILL, Defendant-Appellant.

Second District    No. 2—93—0632

Opinion filed June 7, 1995.

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellant.

Anthony M. Peccarelli, State's Attorney, of Wheaton (Steven R. Splitt, Assistant Attorney General, of counsel), for the People.

JUSTICE RATHJE delivered the opinion of the court:

The defendant, Gerald O'Neill, and codefendant, Jerry Kelley (Kelley), were charged in an eight-count indictment with various offenses relating to taxation and licensing of purveyors of motor fuel which were alleged to have been committed for each of 16 months between August 1988 and November 1989.

The case proceeded to a bench trial which lasted seven days. The State's evidence against the defendant was intended to show the following. Defendant, with knowledge of the nature of the transactions, assisted Kelley in selling No. 2 fuel oil obtained free of all applicable taxes to trucking firms. The No. 2 fuel oil was purchased from a petroleum supplier known as Power Oil run by Charles Kulisek. In turn, this fuel oil was sold to various trucking companies as diesel fuel by five petroleum suppliers set up by Kelley. The applicable motor fuel tax (MFT) was passed on to the trucking firms, collected by the defendants, but not remitted to the State.

Defendant sought to show through cross-examination and argument that he was unaware of the tax ramifications of the transactions and that he was merely working as a commissioned salesman for Kelley.

At the conclusion of the bench trial, defendant was convicted on four counts, namely, acting as a supplier of special fuel without a license (Ill. Rev. Stat. 1987, ch. 120, par. 431(1) (now codified, as amended, at 35 ILCS 505/15(1) (West 1992))); failing to file a MFT return (Ill. Rev. Stat. 1987, ch. 120, par. 431 (now codified, as amended, at 35 ILCS 505/15 (West 1992))); failing to file a retailer's occupation tax return (Ill. Rev. Stat. 1987, ch. 120, par. 452 (now codified, as amended, at 35 ILCS 120/13 (West 1992))); and violating a regulation of the Retailer's Occupation Tax Act (Ill. Rev. Stat. 1987, ch. 120, par. 452 (now codified, as amended, at 35 ILCS 120/13 (West 1992))) and Illinois Administrative Code, chapter I, section 130.535(a) (86 Ill. Adm. Code § 130.535(a) (1991)). Kelley was similarly convicted, but this appeal does not involve him. Defendant was thereafter sentenced to a term of 30 months' probation, subject to the condition that he serve 364 days' periodic imprisonment and pay restitution in the amount of $168,132.92. This timely appeal followed.

On appeal, defendant raises two arguments, namely, (1) that he was not proved guilty beyond a reasonable doubt, and (2) that venue was not proper in Du Page County. As the parties are fully aware of the facts, we will cite only those relevant to the determination of the issues.

We first address defendant's argument that he was not proved guilty beyond a reasonable doubt of aiding the violations of the licensing and tax provisions charged. Defendant specifically contends that the State did not prove that he knew of his obligation to obtain a supplier's license and pay motor fuel and retail occupation taxes or that he had specific intent to facilitate Kelley's evasion of these obligations. In response, the State maintains that the evidence clearly establishes that defendant knowingly aided and abetted Kelley's scheme to sell No. 2 fuel oil as diesel fuel, collect applicable taxes from his customers, and then refuse to remit those taxes to the State.

In *People v. Collins* (1985), 106 Ill. 2d 237, our supreme court set out the relevant standard of review:

"A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. [Citations.] *** When presented with a challenge to the sufficiency of the evidence, it is not the function of this [reviewing] court to retry the defendant. As the United States Supreme Court observed in *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781,

2789, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' The court went on to note that, '[o]nce a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.' " (Emphasis in original.) 106 Ill. 2d at 261.

Defendant was convicted under a theory of accountability. A person is legally accountable for the criminal conduct of another when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1987, ch. 38, par. 5—2(c) (now 720 ILCS 5/5—2(c) (West 1992)).) Intent to promote or facilitate an offense may be shown by evidence that the defendant shared the principal's criminal intent, or by evidence that the defendant and the principal shared a common criminal design. (*People v. Stanciel* (1992), 153 Ill. 2d 218, 234-35.) A defendant can aid and abet a principal without actively participating in the overt act itself. (*Stanciel*, 153 Ill. 2d at 237.) Moreover, intent may be inferred not only from the character of defendant's acts but also from the circumstances surrounding the commission of the offense. *People v. Terrell* (1989), 132 Ill. 2d 178, 204.

It is undisputed that in the petroleum industry, No. 2 fuel oil, which is customarily used as heating oil, may also be sold as diesel fuel for over-the-road vehicles. Although these products are the same, diesel fuel is taxed at a considerably higher rate than heating oil. If No. 2 fuel oil is used for diesel fuel for an over-the-road purpose, as, for instance, by a trucking firm, the sale of the oil must include the MFT which, in turn, must be remitted to the State.

The evidence indicates that defendant played a significant role in the scheme to avoid the payment of the MFT. For example, relevant stipulations demonstrate that a number of the trucking companies dealt exclusively with defendant when ordering fuel from Kelley's oil companies. The evidence further demonstrates that defendant was directly involved with fuel sales, the collecting of payments, and other day-to-day activities of Kelley's businesses. Further, John Wicklund stated that he worked for Kelley in 1988. Wicklund testified that Kelley told him that defendant was involved in the subject scheme. Moreover, defendant attempted on numerous occasions to disguise his identify in connection with fuel sales. Viewed in

the light most favorable to the State, this evidence demonstrates to us that defendant shared a common criminal design with Kelley and that he acted in furtherance of said plan. Accordingly, we find that defendant was proved guilty beyond a reasonable doubt.

Defendant's reliance on *Ratzlaf v. United States* (1994), 510 U.S. 135, 126 L. Ed. 2d 615, 114 S. Ct. 655, is not persuasive. The *Ratzlaf* court found that the government had to prove that a defendant, who was charged with wilfully structuring a cash transaction to avoid bank reporting requirements, had acted with the purpose of evading said requirements and that he knew such evasion was unlawful. (*Ratzlaf*, 510 U.S. at 136, 126 L. Ed. 2d at 619-20, 114 S. Ct. at 657-58.) The *Ratzlaf* court emphasized that the structuring of currency transactions is not "inevitably nefarious" and gave examples of such transactions that would not be subject to criminal charges. (510 U.S. at 144-45, 126 L. Ed. 2d at 624, 114 S. Ct. at 660-61.) As the State correctly points out, collecting taxes and not remitting them to the State is always nefarious. Thus, *Ratzlaf* is distinguishable from the appeal at bar.

Defendant's final argument is that proper venue in this case was not Du Page County, where he was tried and convicted. Defendant asserts that proper venue in this case is Cook County, where 9 of the 13 bulk users to which fuel was delivered were located. In response, the State argues that there is ample evidence that the subject motor fuel was distributed in Du Page County.

Venue is a material allegation which, along with the other elements of an offense, must be proved beyond a reasonable doubt. (*People v. Hagan* (1991), 145 Ill. 2d 287, 300.) In order for the State to prove venue beyond a reasonable doubt, inferences from established facts are allowed. (*Hagan*, 145 Ill. 2d at 300.) To determine where an offense was committed for purposes of venue, a court must determine where the acts, which constitute the offense, occurred. *People v. Caballero* (1992), 237 Ill. App. 3d 797, 803.

Defendant's heavy reliance on *People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, is misplaced. In *Valley Steel*, defendants were charged in Sangamon County with distributing motor fuel without a license by transporting motor fuel into Illinois and distributing it to points located in three named Illinois municipalities. The trial court granted defendant's motion to dismiss the charges of distributing motor fuel without a license on the ground that the communities in which the alleged distributions were made were outside of Sangamon County and, thus, venue was improper. The *Valley Steel* court found that there was nothing in the indictment alleging that any distribu-

tion of motor fuel took place in Sangamon County. As a result, the supreme court affirmed the trial court's dismissal of the charges of acting as a distributor without a license on the ground of improper venue.

■ In contrast to *Valley Steel*, the record on appeal contains evidence that a substantial part of the subject scheme was carried out by Kelley and defendant in Du Page County. For example, Frank Stroka, who delivered fuel oil for Kelley to a variety of trucking companies, testified that his business relationship with Kelley commenced at the latter's Warrenville, Illinois, service station. Further, a Department of Revenue search of the Warrenville station revealed blank invoices for Fairmore Fuels, which were similar to those forms sent out to Fairmore's trucking customers. Fairmore Fuels' address in the invoices was determined to be that of West Suburban Answering Service in La Grange, Illinois. Also recovered in the search were five manilla envelopes bearing the names of U.S. Oil Company, Inc.; L.P. Services; American Oil Company; American Oil Corporation; and defendant. Searchers at the Warrenville station further found photocopies from Smith Cartage covering the period of December 1987 to January 1989. Evidence indicated that Smith Cartage delivered No. 2 fuel for Kelley, who was doing business with Smith as Hi-Temp, to trucking companies and other concerns.

Moreover, Tammy Sickler, a bookkeeper at the Warrenville station, testified that she often typed invoices for Hi-Temp and Phillips Oils, the names of two of Kelley's supplier companies. Sickler testified that these invoices were to be sent to a number of trucking companies. Also, Charles Kulisek, owner of Power Oil which sold No. 2 fuel oil to Kelley's operations, testified that he went, at times, to the Warrenville station, as well as a Lombard office, to pick up envelopes containing cash payments for fuel oil. Finally, defendant admits that 4 of the 13 trucking companies to which fuel oil was sold were located in Du Page County.

This evidence sufficiently demonstrates that venue was proper. A substantial portion of the subject business was carried on in Du Page County. Also, a significant number of Kelley's and defendants' customers were located in said county. Moreover, in cases such as this, where the record shows that defendants carried on business through a shadowy network of secretarial services, message centers, and answering services, evidence of proper venue is necessarily difficult to obtain. To require more evidence of venue than was presented here would be to put too great a burden upon the State.

For reasons stated above, we affirm the judgment of the circuit court.

Affirmed.

BOWMAN and DOYLE, JJ., concur.