23 May 2000

3--99--0272

IN THE 

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2000

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS,                  )   for the 14
th
 Judicial circuit 

Petitioner-Appellee, ) Rock Island County, Illinois

)

v. ) 

) No. 98--MR--268

ERROL DEAN WINTERHALTER, ) 

            ) Honorable

Respondent-Appellant. ) Larry S. Vandersnick,

) Judge Presiding

JUSTICE HOMER delivered the opinion of the court:

 

Respondent was committed to a Department of Corrections facility pursuant to the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 
et
 
seq.
 (West 1998)).  He appeals, 
 arguing (1) the Act violates the Illinois and United States Constitutions' 
ex
 
post
 
facto
,
 
equal protection and
 substantive due process
 clauses
; (2) the State failed to prove respondent is a sexually violent person beyond a reasonable doubt;
 (3) the trial judge erred in refusing to grant respondent's motion 
in
 
limine
 in full;
 and (4) the trial judge failed to provide a statutorily required hearing prior to ordering respondent committed to a secure facility.  
After our careful review, we affirm.

FACTS

Respondent was convicted in 1995 of the aggravated criminal sexual abuse of his niece (720 ILCS 5/12--16 (West 1994)) and was sentenced to five years' incarceration.  Respondent was released on mandatory supervised release after serving less than two years of that sentence; however, based on an arrest for assault in Iowa, respondent's mandatory supervised release was revoked and he was returned to the Department of Corrections (DOC).  Within 90 days of respondent's scheduled release, the State's Attorney filed a petition under the Act (725 ILCS 207/1 
et
 
seq.
 (West 1998)) to have respondent committed as a sexually violent person.

At trial, the State sought to introduce a police video taken following respondent's arrest in Iowa on assault charges. In this video, respondent admitted to having committed the 1995 offense.  The State also sought to have respondent's niece, K.W, testify regarding the details of that crime.  Respondent brought a motion 
in
 
limine
, seeking to bar these two pieces of evidence.  The trial judge permitted the State to introduce the evidence; however, the State was limited to using only a 15-second portion of the videotape depicting respondent's admission and the State was barred from introducing testimony from respondent's niece regarding the impact of the crime.

K.W. testified that when she was 15 years old, she lived with respondent, his wife and the couple's children in their home.  On one occasion the family was helping friends move.  After respondent's wife and kids returned home respondent began "kissing on" K.W.  Later, as K.W. and respondent walked home respondent knocked her down, got on top of her, and began putting his hand up her shirt and down her pants.  She testified that she tried pushing him off and telling him to quit.  Though she managed to get him off of her, he knocked her down again a short distance later.  Again,  she told him to stop and eventually he got off of her and they returned home.

Once at home, K.W. put on her nightgown and got into bed.  According to K.W., respondent then came into her room and "had sex with [her]."  She testified that, while respondent was raping her, he asked what she would do if he got her pregnant.  K.W. started crying and said she did not know.  At that point, respondent got dressed and went back upstairs and K.W. cried herself to sleep until her aunt came to wake her up. 

In addition to K.W.'s testimony
 and the video segment
, containing respondent's admission, the State presented expert testimony from two psychiatrists. Both Dr. Leavitt and Dr. Buck testified that respondent suffered from paraphilia (a sexual attraction to nonconsenting or underage females), alcohol abuse disorder, antisocial personality disorder and borderline intellectual functioning.  Dr. Buck testified that, based on the risk factors identified by researchers in the area of sex offenders, she considered respondent to be at high risk of reoffending with additional acts of sexual violence.  Dr. Leavitt testified that, based on standardized psychological test scores, it was substantially probable that respondent would in the future commit additional acts of sexual violence.  

Dr. Chapman, a psychiatrist, testified as an expert for respondent that respondent was partially retarded, had low intellectual functioning and was not likely to commit future acts of sexual violence.  Respondent also introduced evidence, outside the presence of the jury, that if he was found sexually violent but a candidate for conditional release, he had a job and a place to live.

The jury found respondent to be a sexually violent person (SVP).  The trial judge ordered respondent committed to a DOC facility.  
Additional facts necessary to our decision will be discussed below.

ANALYSIS

I. Constitutional Challenge

A. 
Ex Post Facto
 Prohibition

Respondent argues that because the Act is criminal in nature, his commitment violates the 
ex
 
post
 
facto
 prohibition of our state and federal constitutions. However, during the pendency of this appeal, our supreme court had occasion to consider
 this same argument and held that it was without merit.  See 
In re Detention of David C. Samuelson
, 189 Ill. 2d 548 (2000)
 Accordingly, respondent is not entitled to relief on this basis.

B. 
Equal Protection

Respondent also argues that similarly situated persons are treated differently depending on whether the State proceeds under the Act or the Sexually Dangerous Persons Act (725 ILCS 205/0.01 
et
 
seq.
 (West 1998)).  In support, he argues that individuals committed pursuant to the Sexually Dangerous Persons Act are afforded "rights, privileges, entitlements and benefits" that are not extended to those committed under the Act.  For example, the Act gives the State the right to request a jury trial in the initial commitment proceedings
, whereas under the Sexually Dangerous Persons Act the State has no such right.   Furthermore, unlike a sexually dangerous person (SDP), an SVP has no right to have a jury consider his petition for conditional release or discharge and is subject to greater limitations in the filing of such petitions. Therefore, respondent argues that the Act violates the equal protection clauses of the Illinois and United States Constitutions.

Equal protection analysis is the same under both the Illinois Constitution and the United States Constitution.  
Samuelson
, 189 Ill. 2d  at 561
.  In evaluating an equal protection challenge to the Act,
 
our supreme court in 
Samuelson
, 189 Ill. 2d at 562,
 applied the rational basis test.  Under the rational basis test, 
the court simply inquires whether the method or means employed in the statute to achieve the stated goal or purpose of the legislation is rationally related to that goal.  
Samuelson
, 189 Ill. 2d  at 562
.
 Consequently, if any set of facts can reasonably be conceived to justify the classification, it must be upheld.  
In re A.A.
, 181 Ill. 2d 32, 38, 690 N.E.2d 980, 982-83 (1998).

Here, there is a rational basis for treating persons committed under the Act differently than those committed under the Sexually Dangerous Persons Act.  Each act applies to separate classes of individuals.  The Act requires the State to prove that it is "substantially probable the person 
will engage in acts of sexual violence," (725 ILCS 207/5(f) (West 1998)), whereas the Sexually Dangerous Persons Act requires the State to show only that the person has "criminal propensities to the commission of sex offenses, and *** propensities toward acts of sexual assault or acts of sexual molestation of children."  725 ILCS 205/1.01 (West 1998).  Furthermore, an SVP has, by definition, been convicted, adjudicated delinquent, or found not guilty by reason of insanity, of a sexually violent offense.  725 ILCS 207/5(f) (West 1998).  On the other hand, an SDP need not have ever faced a trial for a sex offense. 

Because the State has a legitimate interest in ensuring that individuals are not erroneously committed as sexually dangerous, the Sexually Dangerous Persons Act logically provides for different procedures, rights and burdens of proof
.  Because an SVP has already been found to have committed a sexually violent offense in judicial proceedings where the SVP has enjoyed all the constitutional protections guaranteed such individuals, the Act logically need not again provide identical procedures, rights and privileges to protect against erroneous commitment.  

The procedures, rights and privileges provided by the Act are rationally related to the State's goal of protecting society from those alleged by the State to be sexually violent persons.  A
ccordingly, we reject respondent's equal protection challenge.

C. 
Substantive Due Process

Respondent also complains that the Act violates substantive due process because "mental disorder" is too broad, vague and manipulable, and because "substantial probability" is glaringly vague and uncertain.  Identical statutory language was challenged in 
Kansas v. Hendricks
, 521 U.S. 346, 138 L.Ed. 2d 501, 117 S. Ct. 2072 (1997), and the United States Supreme Court found no violation of substantive due process.  Respondent urges that we may nonetheless
 find the Illinois Constitution to provide more expansive protection.  See 
People v. Mitchell
, 165 Ill. 2d 211, 217, 650 N.E.2d 1014, 1017 (1995).  

We decline to do so.  In order to interpret an Illinois constitutional provision more expansively than its federal counterpart, we must find in the language of our constitution, or in the debates and committee reports of the constitutional convention, something which will indicate that the provisions of our constitution are intended to be construed differently than are the similar provisions in the federal constitution.  
Mitchell
, 165 Ill. 2d at 217, 650 N.E.2d at 1017.  Respondent fails to offer any authority to support his contention that the Illinois due process clause is to be interpreted more expansively than its federal counterpart.
  Consequently, his substantive due process claim must fail.

II. Sufficiency of the Evidence

Next, respondent argues that the evidence presented was insufficient to establish that he is a sexually violent person.  Under the Act, in order to prove the respondent was a sexually violent person, the State was required to prove that he (1) had been convicted of a sexually violent offense; (2) was within 90 days of discharge from the DOC; (3) has a mental disorder; and (4) is dangerous to others because the mental disorder creates a substantial probability that he will engage in future acts of sexual violence. 725 ILCS 207/15 (West 1998). 

In reviewing the sufficiency of the evidence, our standard of review is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense to have been proved beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985).

The respondent admits he was convicted of a sexually violent offense and that he was within 90 days of discharge from the DOC.  Two experts testified that respondent has a mental disorder which makes it substantially probable that he will commit sexually violent acts in the future.  Dr. Leavitt testified that psychological screening tools suggested a high probability that respondent would commit future acts of sexual violence.  We find that a rational trier of fact could have found beyond a reasonable doubt that respondent is a sexually violent person as defined by the Act.

III. Motion 
in
 
Limine

Respondent next contends that the trial judge erred by permitting the State to introduce a portion of a videotaped statement made by respondent and by permitting the State to introduce the testimony of respondent's victim regarding the 1995 offense. 
 
It is the function of the trial judge to weigh the probative value and potential prejudicial effect of evidence, and the decision of the trial judge will not be reversed absent an abuse of discretion.  
People v. Hobley
, 159 Ill. 2d 272, 317, 637 N.E.2d 992, 1012 (1994).

Respondent argues that the trial judge abused his discretion in admitting both the videotaped statement and the testimony of respondent's niece because the prejudicial nature of that evidence far outweighed any probative value.  Respondent argues that both the video evidence and his niece's testimony were probative only of the fact that he had been convicted of a sexually violent offense.  Because he was willing to stipulate to the conviction and because his conviction of that offense was a matter of record, respondent argues that the testimony and the video were cumulative and served only to inflame the passions of the jury.

The State argues that, since the rules of evidence in criminal actions apply to this civil proceeding, the State is allowed to prove every element of the crime charged and every relevant fact, even if a party agrees to stipulate to a fact.  
People v. Hobley
, 159 Ill. 2d 272, 316, 637 N.E.2d 992, 1012 (1994).  Thus, the State argues, regardless of respondent's willingness to stipulate to the fact of the conviction, the State was entitled to introduce evidence to prove that necessary element.

Initially, we note that the record on appeal does not include the video.  Therefore, this court is unable to evaluate respondent's claim that because the video portrays him as very upset and angry, it was prejudicial to him.  The appellant bears the burden of presenting a sufficiently complete record of the proceedings at trial, and, in the absence of a complete record, it will be presumed that the trial court's order was in conformity with the law and had a sufficient factual basis.  
People v. Benson
, 256, Ill. App. 3d 560, 563, 627 N.E.2d 1207, 1209 (1994).

On the other hand, we agree with respondent that the trial court erred in permitting the testimony of K.W., the victim of the 1995 crime for which respondent was incarcerated.  While the State is obliged to prove that a respondent has been convicted of a sexually violent offense, that element of the State's petition is sufficiently proven by the introduction of a certified copy of the respondent's conviction.  Therefore, the testimony of a victim describing the details of such crime would be admissible only if relevant to the remaining isssues of whether the person has a mental disorder and is dangerous to others because the person's mental disorder creates a substantial probability that he or she will engage in acts of sexual violence.  See 725 ILCS 207/15(b)(4), (5) (West 1998).  It is clear when applying this standard that the probative value of K.W.'s testimony was outweighed by its potential prejudicial effect.  Therefore, we conclude that the trial court abused its discretion in admitting K.W.'s testimony.

However, we find this error harmless in light of the overwhelming evidence supporting the jury's verdict.  Dr. Buck testified that respondent continues to deny responsibility for any of his sexual misconduct.  In his interview with Dr. Buck, respondent discussed three sex related offenses for which he had  been convicted.  Respondent called the victims of these offenses "whores" and "bitches."  He told Dr. Buck that he hoped he had ruined his victims' lives.  Respondent also told Dr. Buck that the victims of his sexual crimes were to blame for his incarceration because they called the police when respondent felt they did not need to do so.  Both Dr. Leavitt and Dr. Buck agreed that respondent is properly diagnosed with paraphilia, alcohol abuse, antisocial personality disorder, and borderline intellectual function.  Dr. Leavitt testified that three separate screening tools used by psychologists to predict recidivism indicated a high risk that respondent would reoffend if released into society.  Given the overwhelming weight of the evidence, the error in admitting K.W.'s testimony was harmless.

IV. Dispositional Hearing

Respondent argues that, after the jury found respondent to be a sexually violent person, the trial judge should have conducted a formal dispositional hearing before deciding to summarily commit respondent to the DOC.  Respondent complains he was denied the opportunity to present his case that he would be an appropriate candidate for conditional release.  The State argues the statute is clear that the trial court 
may
 conduct such a dispositional hearing if the court lacks sufficient evidence to determine immediately following trial whether to commit the respondent to the DOC or allow him conditional release. Statutory construction presents a question of law which this court decides 
de
 
novo
.   
Advincula v. United Blood Services
, 176 Ill. 2d 1, 12, 678 N.E.2d 1009, 1015 (1996).  

Section 40 (b)(1) of the Act provides, in relevant part:

"The court 
shall
 enter an initial commitment order under this Section 
pursuant to a hearing held as soon as practicable after the judgment is entered
 that the person *** is a sexually violent person.  If the court lacks sufficient information to make the determination [whether institutional care in a DOC facility or conditional release is appropriate] immediately after trial, it 
may 
adjourn the hearing and order the [Department of Human Services] to conduct a predisposition investigation or a supplementary mental examination, or both, to assist the court in framing the commitment order." (Emphasis added.) 725 ILCS 207/40(b)(1) (West 1998).

The parties dispute whether respondent was entitled to a dispositional hearing prior to his commitment; however, the parties blur the distinction between the predisposition investigation or supplementary mental examination which the court 
may
 in its discretion order with the dispositional hearing which the court is 
required
 to hold. 

Immediately following the verdict, the trial judge noted that a hearing needed to be held to determine whether respondent should be ordered committed to a secure facility or allowed conditional release.  Respondent indicated that he would prefer that the trial court wait for Dr. Leavitt to draft a report regarding his treatment recommendation prior to deciding respondent's disposition. The trial judge, however, indicated that he felt he had enough information upon which to base his decision.  He asked the attorneys if either side had any additional evidence they wished to introduce and respondent was asked if he wished to testify.  When both of these questions were answered in the negative, the judge announced his decision to commit respondent to a secured facility.  The trial judge further indicated that, should Dr. Leavitt's report suggest a contrary disposition or should respondent have evidence he wished to introduce at a later time, respondent should file a motion to reconsider.  

Respondent did file a motion to reconsider; however, respondent did not suggest that Dr. Leavitt's report suggested a contrary disposition or that respondent had evidence
 which he wished to introduce.  Rather, respondent asserted that the trial court "should have conducted a formal dispositional hearing including a report from the Department of Human Services and/or supplemental mental examination pursuant to section 207/40 (b)(1)" of the Act. 

Taken in this context, respondent appears to be appealing the trial court's decision not to request either a predisposition investigation or a supplementary mental examination.  Because the arguments before this court refer to a "dispositional hearing,"
 however, we consider also whether respondent was denied a dispositional hearing. 

We first find that, under the plain language of the Act, the trial court is required to conduct a hearing before entering its commitment order.
 After careful review of the record, we are not persuaded that respondent was denied this hearing.  Immediately following the verdict, the trial court gave respondent the opportunity to present evidence or testimony with respect to the commitment order.  Respondent declined this opportunity.  The attorneys on both sides argued as to what each felt would be an appropriate disposition.
  Under the circumstances, we disagree with respondent's contention that he was denied a dispositional hearing.

We further find that, under the plain language of the Act, the trial court may in its discretion request a predisposition investigation or supplementary mental examination if it lacks sufficient information to make its decision.
 Given the evidence that respondent did not take advantage of treatment opportunities while incarcerated, felt that treatment would be useless since he was drunk when he committed his crimes and did not remember them anyway, and failed to attend counseling when required as a condition of his mandatory supervised release following his 1995 sentence, we are persuaded the trial judge had sufficient evidence to conclude that respondent would not have been an appropriate candidate for conditional release.  Consequently, the trial court did not err in failing to request the discretionary predispositional investigation or supplementary mental examination.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

SLATER, PJ, and HOLDRIDGE, J., concurred.