THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL F. RUNGE, Defendant-Appellant.

Third District   No. 3—02—0627

Opinion filed February 20, 2004.

Fletcher P. Hamill, of State Appellate Defender's Office, of Ottawa, for appellant.

Jeff Tomczak, State's Attorney, of Joliet (Lawrence M. Bauer and Sabrina H. Henry, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

Defendant Paul F. Runge was charged in a multicount indictment with various offenses committed during an October 6, 2000, escape from the Department of Human Services (DHS). Defendant pleaded guilty to escape (720 ILCS 5/31—6(b—1) (West 2000)), and, following a bench trial, he was convicted of armed robbery (720 ILCS 5/18—2(a)(1) (West 2000)), two counts of aggravated battery (720 ILCS 5/12—4(b)(8) (West 2000)) and two counts of possession of contraband in a penal institution (720 ILCS 5/31A—1.1(b) (West 2000)). The trial court sentenced defendant to an aggregate term of 90 years' imprisonment. Defendant appeals, arguing that (1) the State failed to prove him guilty of armed robbery beyond a reasonable doubt; (2) his convictions of armed robbery and escape violate one-act, one-crime principles; (3) the offense of escape from the custody of DHS violates constitutional equal protection guarantees; (4) he was not proved guilty beyond a reasonable doubt of possession of contraband based on possession of a cannister of pepper spray; (5) the cause must be remanded for compliance with Supreme Court Rules 605(b) and 604(d) (210 Ill. 2d R. 605(b); 188 Ill. 2d R. 604(d)); and (6) the court was not authorized to impose consecutive sentences for armed robbery and two counts of possession of contraband. We reverse in part and remand for further proceedings.

## FACTS

On May 28, 2002, defendant entered a plea of guilty to the charge of escape. The State's factual basis established that on October 6, 2000, defendant resided in the DHS facility of Sheridan Correctional Center (SCC) pursuant to the Sexually Violent Persons Commitment Act (725 ILCS 207/1 et seq. (West 2000)). Defendant and another

resident, Gregory Conley, escaped while they were being transported from the Sheridan facility to Chicago for court proceedings. Following admonishments, the court accepted defendant's guilty plea. Defendant then waived his right to a jury trial on the remaining charges.

At trial, DHS security aide Rick Schroeder testified that he was assigned to drive three residents from SCC to Chicago for court proceedings on October 6, 2000. He described the DHS treatment and detention facility as physically located in the center of SCC. To leave the facility, DHS residents had to pass through a portion of the prison. Schroeder said he and security therapy aide Manessa Nelson loaded the three residents into the van and left SCC early in the morning.

When they reached Plainfield, Conley appeared to be sick. Conley asked permission to move to the front seat. He was allowed to do so. Schroeder said someone called his name when they reached a stop light, and he turned his head to respond. Schroeder next felt his face being sprayed with pepper spray. He said his eyes "slammed" shut. He managed to park the van and get out. After regaining sight out of one eye, Schroeder found Nelson standing outside the van coughing. Defendant and Conley were gone, and the third resident, George Timmons, was coughing with his head sticking out of a broken window.

Schroeder also testified that DHS issued clothing for the residents to wear when they went to court. He identified articles of clothing worn by defendant and Conley on the date of the offenses as property of DHS.

Naperville police officer Greg Bell testified that he responded to a radio dispatch to be on the lookout for the escapees around 8 a.m. on October 6, 2000. He spotted a four-door sedan bearing the license plate number broadcast in the dispatch. After Bell stopped the vehicle and placed its three occupants under arrest, a gun in a case was removed from the front floorboard of the car.

State Police Special Agent Vic Markowski testified that he interviewed defendant at the Naperville police department on the evening of October 6, 2000. Defendant stated that former DHS employee Doris Harper and Amber Waller, a security therapist aide at the DHS facility, had given Conley and defendant a handcuff key and two cannisters of "mace" to facilitate their escape. The plan was to have Conley feign illness en route to Chicago and ask that the volume of the radio be turned up in the van so that their DHS escorts would not hear the escapees removing their hand and leg restraints. Defendant admitted that he had a cannister of "mace" and the handcuff key on his person when he boarded the van. However, he denied that he used the "mace" when he and Conley escaped.

State trooper Glenn Strobel testified that he inventoried the

contents of the getaway vehicle on October 6, 2000. In addition to the gun and case identified by Bell, Strobel found a shank, DHS clothing that had been issued to defendant and Conley the morning of the offense, shackles, a handcuff key and a cannister of Saber pepper spray.

Larry Olson, a crime scene investigator for the State Police, testified as an expert with regard to the cannister of pepper spray. He stated that the pepper spray cannister recovered from the rented vehicle contained a nonlethal noxious liquid gas commonly known as "mace." The item was the kind of device generally available in retail stores for personal protection and not the kind used by law enforcement officials.

Following closing arguments, the trial court found defendant guilty of robbery, armed robbery, two counts of aggravated battery and two counts of possession of contraband ("mace" and a handcuff key) in a penal institution. The court subsequently sentenced the 32-year-old defendant to consecutive prison terms of 60 years for armed robbery and 15 years for each conviction for possession of contraband. The court also imposed concurrent sentences of seven years for escape and five years for each aggravated battery—these sentences to be served concurrently with the armed robbery sentence. The court ruled that the robbery conviction merged with the armed robbery conviction. Consequently, the court did not impose sentence on the lesser offense. Defendant filed a motion to reduce sentence, which was denied, and he appeals.

## ISSUES AND ANALYSIS

### 1. Armed Robbery

Defendant was charged with robbery by taking the DHS-issued clothing he was wearing from the presence of Schroeder and Nelson by the use of force. He was charged with armed robbery by taking the clothing from Schroeder and Nelson by the use of force while carrying a knife. Defendant now challenges the sufficiency of the State's proof that (a) force was used as a means of taking the clothing from DHS, and (b) he or one of his accomplices carried a knife. He argues that his armed robbery conviction must be reversed outright because there was no concurrence between his use of force and his taking of the clothing. In the alternative, he argues that his conviction must be reduced to simple robbery because the State failed to prove that he or Conley was armed with a knife.

■ Once a defendant has been found guilty of the charged crime, the fact finder's role is preserved. *People v. O'Neill*, 272 Ill. App. 3d 178, 651 N.E.2d 702 (1995). The proper inquiry on appeal is whether, after reviewing all of the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 478 N.E.2d 267 (1985).

■ "A person commits robbery when he *** takes property *** from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18—1(a) (West 2000). Armed robbery is committed when the person commits robbery and "carries on or about his *** person or is otherwise armed with a dangerous weapon." 720 ILCS 5/18—2(a)(1) (West 2000). Although the State need not show that force was exerted for the purpose of taking the property, to sustain a conviction of robbery there must be some concurrence between the defendant's use of force and the taking. *People v. Lewis*, 165 Ill. 2d 305, 651 N.E.2d 72 (1995). Where acts constituting the taking and the force are committed in a single series of continuous acts, a conviction of robbery will be sustained. *Lewis*, 165 Ill. 2d 305, 651 N.E.2d 72.

In this case, the evidence established that defendant was issued DHS clothing for his court appearance on the morning of October 6, 2000, before he boarded the van that was to transport him from Sheridan to Chicago. The evidence did not show that defendant used any force or threat of force at the time DHS transferred the clothing to him.

Nor can we say that the taking of the clothing and the force used to escape were committed in a single series of continuous acts. Defendant wore the clothing from the time he left the Sheridan facility until after he escaped from DHS custody and joined codefendant Harper in the getaway car in Plainfield. During the interval between the "taking" and the use of force, defendant boarded the van and put into action a plan to commit an unrelated, separate offense of escape from DHS custody.

The only use of force proved at trial was the use of pepper spray on Schroeder and Manessa, a separate act of aggravated battery for which defendant was accountable. The pepper spray did not overpower Schroeder's and Manessa's will to retain the clothing defendant was wearing, but overpowered their ability to retain defendant's person. In other words, the pepper spray was not used as a means of acquiring DHS clothing, which defendant already possessed, but as a means of facilitating his escape.

Although our research fails to disclose any precedent for prosecuting a person for robbery of clothes the person is wearing when he uses force to commit another offense, the circumstances presented in *People v. Johnson*, 314 Ill. App. 3d 444, 732 N.E.2d 100 (2000), are analogous. There, the defendant was convicted of armed robbery of a car title and

vehicular hijacking. The evidence at trial showed that no force was exerted when the car owner handed the title to the defendant at the defendant's request. The defendant exited the vehicle, went into a house and then returned to the car. On return, the defendant threatened the owner with a gun and took his car. On appeal from the dismissal of the defendant's postconviction petition, the court ruled that "the force that was used to take the vehicle occurred after and separately from the receipt of title." *Johnson*, 314 Ill. App. 3d at 450-51, 732 N.E.2d at 107. Accordingly, the necessary concurrence between the taking and the force was not established, and the court reversed the armed robbery conviction.

■ Here, as in *Johnson*, the only force used was to commit separate offenses (in this case, aggravated battery and escape) after the "taking" was achieved peaceably. The State's theory that the clothing remained in DHS' possession until defendant escaped is not well-taken. The clothing in this case, no less than the car title in *Johnson*, was physically transferred to defendant's custody and control prior to and separately from any use of force. Because the State failed to prove some concurrence between the use of force and the taking, defendant's conviction for armed robbery must be reversed outright. See *Johnson*, 314 Ill. App. 3d 444, 732 N.E.2d 100.

## 2. Possession of Contraband

Next, defendant argues that his conviction for possession of contraband ("mace") must be reversed because the cannister of Saber pepper spray was not a "weapon" as defined by the contraband statute.

■ A person commits an offense under section 31A—1.1 of the Code when he possesses a weapon while in a penal institution. 720 ILCS 5/31A—1.1(b), (c)(2)(v) (West 2000). Weapons are defined as

> "any knife, dagger, dirk, billy, razor, stiletto, broken bottle, or other piece of glass which could be used as a dangerous weapon. Such term includes any of the devices or implements designated in subsections (a)(1), (a)(3) and (a)(6) of Section 24—1 of this Act, or any other dangerous weapon or instrument of like character." 720 ILCS 5/31A—1.1(c)(2)(v) (West 2000).

Section 24—1 weapons include:

> "any bludgeon, black-jack, slung-shot, sand-club, sand-bag, metal knuckles, throwing star, or any knife, commonly referred to as a switchblade knife, which has a blade that opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife, or a ballistic knife, which is a device that propels a knifelike blade as a projectile by means of a coil spring, elastic material or compressed gas; or

\*\*\*

\*\*\* a tear gas gun projector or bomb or any object containing noxious liquid gas or substance, *other than an object containing a non-lethal noxious liquid gas or substance designed solely for personal defense carried by a person 18 years of age or older*; or

\* \* \*

\*\*\* any device or attachment of any kind designed, used or intended for use in silencing the report of any firearm." (Emphasis added.) 720 ILCS 5/24—1(a)(1), (a)(3), (a)(6) (West 2000).

■ The cannister of Saber pepper spray underlying one of defendant's contraband convictions in this case is expressly excluded as a dangerous weapon under section 24—1(a)(3) and cannot arguably be included as a "dangerous weapon or instrument" similar to any of the other devices listed in the statute. See *People v. Dressler*, 317 Ill. App. 3d 379, 739 N.E.2d 630 (2000). Accordingly, defendant's conviction for possession of contraband ("mace") in a penal institution must be reversed.

### 3. Supreme Court Rules 605(b) and 604(d)

Next, we consider defendant's argument that he is entitled to a remand to the trial court for admonishments pursuant to Supreme Court Rule 605(b), 210 Ill. 2d R. 605(b)) and perfection of an appeal from his conviction of escape pursuant to Rule 604(d) (188 Ill. 2d R. 604(d)).

The record shows that, prior to sentencing, defendant filed a motion to withdraw his plea of guilty to the escape charge. On July 25, 2002, the court imposed sentences on all offenses, including a 7-year sentence for escape to run concurrently with the 15-year sentence imposed for possession of contraband in a penal institution. Defendant then withdrew the motion to withdraw his guilty plea. The trial court gave no admonishments pursuant to Rule 605(b) at that proceeding. Defendant subsequently filed a motion to reconsider sentence. His motion took issue only with the imposition of extended-term and consecutive sentences. It did not seek a reduction of defendant's seven-year sentence for escape. The trial court heard and denied the motion. A notice of appeal was filed, but trial counsel filed no certificate of compliance pursuant to Rule 604(d).

■ Where a defendant enters a blind plea of guilty, the trial court, upon imposing sentence, is required to give admonishments pursuant to Supreme Court Rule 605(b). Under the rule, the defendant must be told, *inter alia*, that he must file a postplea motion in the trial court and that any issue not raised in the motion would be waived on appeal. 210 Ill. 2d Rs. 605(b)(2), (b)(6).

Strict compliance with Rule 605(b) is required, because failure to give the admonishments can result in the loss of the right to appeal. *People v. Jamison*, 181 Ill. 2d 24, 690 N.E.2d 995 (1998); *People v. Lloyd*, 338 Ill. App. 3d 379, 788 N.E.2d 1169 (2003). The State argues that a remand is not required in this case because defense counsel filed posttrial motions raising many of the issues raised in this appeal.

■ Although it is true defendant filed both a motion to reduce sentence and a motion to withdraw his guilty plea, neither motion preserved for review issues relating to defendant's conviction and sentence for escape. Without a showing that defendant was told of his appeal rights, it cannot be assumed that he was aware that any arguable issues relating to his guilty plea could be waived on review when he withdrew his motion to withdraw his guilty plea. Accordingly, we remand the cause to the trial court with directions to admonish defendant pursuant to Rule 605(b) and to allow him an opportunity to file a postplea motion and perfect his appeal from his conviction and/or sentence for escape pursuant to Supreme Court Rule 604(d). See *People v. Foster*, 171 Ill. 2d 469, 665 N.E.2d 823 (1996).

### 4. Escape

Finally, although defendant failed to perfect an appeal from his escape conviction, we choose to reach defendant's constitutional challenge to the escape statute. Defendant argues that subsection 31—6(b—1) of the Criminal Code of 1961 (Code) (720 ILCS 5/31—6(b—1) (West 2000)) violates constitutional equal protection guarantees. Specifically, he contends that the statute unfairly criminalizes escape by persons committed to DHS under the Sexually Violent Persons Commitment Act and not persons committed to DHS for other reasons.

■ Subsection 31—6(b—1) provides as follows:

"A person committed to the Department of Human Services under the provisions of the Sexually Violent Persons Commitment Act or in detention with the Department of Human Services awaiting such a commitment who intentionally escapes from any secure residential facility or from the custody of an employee of that facility commits a Class 2 felony." 720 ILCS 5/31—6(b—1) (West 2000).

■ The constitutional right to equal protection of the law guarantees that the State must treat similarly situated persons in a similar manner. *People v. Kimbrough*, 163 Ill. 2d 231, 644 N.E.2d 1137 (1994). The State nonetheless retains the power to classify and draw lines that treat different classes of persons differently. If a statutory classification neither impinges on a fundamental right nor is based on a "suspect" class, a court will use the "rational basis" test to review the statute's validity. *Kimbrough*, 163 Ill. 2d 231, 644 N.E.2d 1137. Under this test, a statutory classification will be upheld if it bears a

rational basis to a legitimate state interest. *Kimbrough*, 163 Ill. 2d 231, 644 N.E.2d 1137.

Defendant does not claim that he is a member of a "suspect" class. Therefore, the statutory provision here at issue will be found to pass constitutional muster if there is any rational basis for differentiating between persons committed to DHS under the Act and those committed to DHS for other reasons.

A person committed to DHS or awaiting commitment under the Sexually Violent Persons Commitment Act has been previously convicted of a sexually violent offense or found not guilty of such offense by reason of insanity. 725 ILCS 207/15(b) (West 2000). In this respect, such persons are not similarly situated to persons committed under the Sexually Dangerous Persons Act (725 ILCS 205/1.01 *et seq.* (West 2000)), who have been charged but not convicted, or to other residents of DHS, whose involuntary commitment does not follow a criminal conviction for a sexually violent offense. See *In re Ottinger*, 333 Ill. App. 3d 114, 775 N.E.2d 203 (2002); *People v. Hancock*, 329 Ill. App. 3d 367, 771 N.E.2d 459 (2002); *In re Detention of Bailey*, 317 Ill. App. 3d 1072, 740 N.E.2d 1146 (2000); *In re Detention of Varner*, 315 Ill. App. 3d 626, 734 N.E.2d 226 (2000), *aff'd*, 207 Ill. 2d 425, 800 N.E.2d 794 (2003); *People v. Winterhalter*, 313 Ill. App. 3d 972, 730 N.E.2d 1158 (2000).

The legislature could have rationally determined that the class of persons whose sexually violent offenses had been established beyond a reasonable doubt in prior criminal proceedings posed a potentially greater menace to society if they escaped DHS custody than escapees who had been committed to DHS pursuant to other civil proceedings. The heightened need to protect the public from sexually violent escapees is a legitimate state interest justifying the imposition of criminal liability when they escape. Accordingly, we conclude that subsection 31—6(b)—1) of the Code does not violate equal protection guarantees. See *Winterhalter*, 313 Ill. App. 3d 972, 730 N.E.2d 1158.

## CONCLUSION

Our disposition of the foregoing issues renders moot defendant's one-act, one-crime and consecutive sentencing issues. Therefore, without addressing those issues, we reverse defendant's convictions for armed robbery and possession of contraband ("mace") in a penal institution and vacate the sentences imposed for those offenses. With respect to defendant's conviction for escape, we remand the cause to

the Will County circuit court for further proceedings pursuant to Supreme Court Rules 605(b) and 604(d).

Reversed in part and remanded with directions.

HOLDRIDGE, P.J., and SCHMIDT, J., concur.