# IN THE SUPREME COURT OF IOWA

No. 138 / 04-1707

Filed April 7, 2006

**IN RE DETENTION OF WILLIE BRADFORD**,

Appellant.

---

Appeal from the Iowa District Court for Black Hawk County, Stephen C. Clarke and George L. Stigler, Judges.

Respondent appeals from order for commitment as sexually violent predator under Iowa Code chapter 229A (2003). **AFFIRMED.**

Mark C. Smith, First Assistant State Public Defender, and Michael H. Adams, Assistant Public Defender, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Denise A. Timmins, and Andrew B. Prosser, Assistant Attorneys General, for appellee.

**LARSON, Justice.**

Willie Bradford has appealed an order for commitment as a sexually violent predator under Iowa Code chapter 229A (2003), alleging that the statute is unconstitutional on ex post facto and double jeopardy grounds. We affirm.

## I. *Facts and Prior Proceedings.*

In 1991 Bradford was convicted of second-degree sexual abuse and indecent contact with a minor and was sentenced to concurrent terms of twenty-five and two years, respectively. Both offenses are "sexually violent" offenses as defined by Iowa Code section 229A.2(10)(*a*). He was confined at the Anamosa State Penitentiary, but was eligible to be released on June 1, 2004. Prior to his release date, proceedings were commenced to have Bradford confined as a sexually violent predator. Acting pursuant to Iowa Code section 229A.3(5), a prosecutors' review committee appointed by the attorney general determined that Bradford met the definition of a "sexually violent predator" and requested the district court to determine that probable cause existed to believe Bradford was a sexually violent predator. The district court found probable cause and set a jury trial on the matter. Bradford filed a motion to dismiss on the constitutional grounds he now urges, but his motion was denied, and the case proceeded to a jury trial.

At the trial, the State introduced the videotaped deposition of Anna Salter, Ph.D., who had examined Bradford to determine whether the court should order confinement. Dr. Salter testified that Bradford suffered from pedophilia and that he is likely to engage in predatory acts constituting sexually violent offenses if not confined in a secure facility. *See* Iowa Code § 229A.1. Dr. Salter based her opinion on "an extensive history of molesting female children under the age of thirteen." Dr. Salter used four tests to determine Bradford's likelihood to reoffend and rated Bradford as a

high risk for reoffending. On one test, he scored the highest possible rating. At the time of the interview, the expert testified "he's not old enough [so] that we can count on age reducing his risk for recidivism." She noted that Bradford had not done well in the treatment program that had been provided for him.

Following the trial, the jury found that Bradford is a sexually violent predator as defined by Iowa Code section 229A.2(11). The court ordered Bradford to be committed to the custody of the department of human services "for control, care, and treatment until such time as his mental abnormality has so changed that he is safe to be placed in a transitional release program or discharged." *See* Iowa Code § 229A.7(4).

## II. *The Issues.*

Bradford contends that, because his criminal offenses in 1991 predated the enactment of our sexually violent predator act in 1998, the application of the act to him violated ex post facto and double jeopardy provisions of both the United States and Iowa Constitutions. These arguments have been rejected by this court in a series of cases on the ground that chapter 229A is a civil, not criminal, statute. *See In re Det. of Garren*, 620 N.W.2d 275, 283-86 (Iowa 2000); *see also In re Det. of Palmer*, 691 N.W.2d 413, 422 (Iowa 2005); *In re Det. of Ewoldt*, 634 N.W.2d 622, 623 (Iowa 2001); *In re Det. of Williams*, 628 N.W.2d 447, 451 (Iowa 2001).

However, Bradford argues that the nature of chapter 229A has changed dramatically because the legislature has amended three sections of that chapter and has enacted a new statute in chapter 901A (relative to punishment of persons previously committed as sexually violent predators). The upshot of all of this, according to him, is that the statute has been transformed from civil to criminal, thus implicating ex post facto and double jeopardy principles.

These statutory changes since *Garren* are the addition of (1) section 229A.5B (making it a misdemeanor for a person to leave a secure facility without permission), (2) section 229A.5C (providing for suspension of the treatment process during prosecution for any criminal offense committed while confined as a sexually violent predator), and (3) section 229A.8(1) (providing rebuttable presumption that commitment should continue). The fourth statutory change is the addition of Iowa Code section 901A.2(6), which provides a possible life sentence for persons in a transitional release program or who have been discharged under chapter 229A if they are subsequently convicted of a predatory or sexually violent offense. Although the State contends the issues raised by these amendments are not ripe for adjudication because they have not yet affected Bradford, we prefer to affirm the district court's decision on its merits.

### III. *Merits.*

In *Garren* we held that chapter 229A is civil in nature, relying largely on *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997). In *Hendricks* the Court noted that, while it usually defers to the categorization of a statute by the legislature, this is not necessarily dispositive in determining whether the proceeding in question was civil or criminal. *Id.* at 361, 117 S. Ct. at 2082, 138 L. Ed. 2d at 515. However, the Court will reject the legislature's manifest intent only if a challenging party provides the "clearest proof that the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." *Id.* at 361, 117 S. Ct. at 2082, 138 L. Ed. 2d at 514-15 (alterations in original) (citation omitted). In *Garren* we relied on the following two-part test of *United States v. Ward*, 448 U.S. 242, 248-49, 100 S. Ct. 2636, 2641, 65 L. Ed. 2d 742, 749-50 (1980):

> [First,] whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where Congress has indicated an intention to establish a civil penalty, [the Court] inquire[s] further whether the statutory scheme [is] so punitive either in purpose or effect as to negate that intention.

(Citations omitted).

In *Garren* we noted that the legislature had specifically labeled the act as civil and placed it between two other civil provisions. *Garren*, 620 N.W.2d at 280. We then focused on whether the statute was so punitive in nature as to negate the intention that it should be civil. In resolving that issue, we noted the factors set out in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963):

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . .

372 U.S. at 168-69, 83 S. Ct. at 567-68, 9 L. Ed. 2d at 660-61.

In applying these factors, we adopted reasoning similar to that of *Hendricks*—while chapter 229A did impose an affirmative constraint upon the individual, this was not sufficient to make it criminal in nature in view of the fact that the confinement of mentally unstable persons has long been cited as a classic example of nonpunitive detention. *See Garren*, 620 N.W.2d at 280 (citing *Hendricks*, 521 U.S. at 363, 117 S. Ct. at 2083, 138 L. Ed. 2d at 516 (quoting *United States v. Salerno*, 481 U.S. 739, 748-49, 107 S. Ct. 2095, 2102, 95 L. Ed. 2d 697, 710 (1987)).

Although *Garren* held that chapter 229A is civil in nature and has been reaffirmed in subsequent cases, these cases have not addressed the specific issues involved in this appeal, i.e., whether the effect of recent

statutory amendments following *Garren* have altered the nature of chapter 229A by making it a criminal statute.

A. *Section 229A.5B.* In 2001 the Iowa legislature enacted section 229A.5B. This section makes it a simple misdemeanor for a person detained pursuant to chapter 229A to leave the facility without permission, to be knowingly and voluntarily absent from the place where the person is required to be, or to leave the custody of persons transporting or guarding the committed person. Bradford argues that this new section must be contrasted with other statutes regarding a person leaving a facility for mentally ill patients, such as Iowa Code sections 229.13 and 229.14B, or leaving a facility after commitment for substance abuse as provided in Iowa Code section 125.85(5). Unlike these other statutes, which merely provide mechanisms for returning an escaped person to custody, section 229A.5B imposes criminal sanctions on persons escaping from custody imposed under chapter 229A. Therefore, Bradford contends, this suggests that chapter 229A is now criminal in its entirety.

While section 229A.5B makes it a criminal offense to escape after being committed, it does nothing to alter the civil nature of the underlying commitment. The criminal penalty is not imposed because the person is in chapter 229A confinement, but because he has committed the crime of escape while being so confined. Furthermore, we will not assume that the legislature's placing of a criminal provision within a statute we have held to be civil in nature evidences an intent to transform the whole chapter into one that is criminal in nature. This inference sought by Bradford falls short of the "clearest proof" required to make chapter 229A criminal in nature. *See Hendricks,* 521 U.S. at 361, 117 S. Ct. at 2082, 138 L. Ed. 2d at 514-15.

In addition, there are sound reasons for the legislature to criminalize escapes from 229A confinements but not escapes from other settings. One of the main purposes of chapter 229A is the protection of the public. *See* Iowa Code § 229A.1 (Sexually violent predators have "antisocial personality features that are unamenable to existing mental illness treatment modalities and that render them likely to engage in sexually violent behavior."). To punish the escape of such persons is logical; it tends to deter escapes and aids the protection of the public. In addition, commitment under chapter 229A is long-term, compared to treatment under chapter 229 (mental illness), which is "intended to provide short-term treatment" to those with mental disorders. Iowa Code § 229A.1; *see also* Iowa Code § 125.85(1) (providing commitment for term not to exceed ninety days for substance abuse). The escape of a sexually violent predator is therefore a greater risk to the community and more disruptive to their treatment plan, thus warranting a more serious response.

Although the specific issue raised here has apparently not been adjudicated in other states, many states have criminalized escape by sexually violent predators, yet their courts have held their sexually violent predator laws to be civil in nature. For example, Florida has made escaping from civil commitment a second-degree felony, *see* Fla. Stat. § 394.927(1), yet it has held that the statute is civil in nature. *See Westerheide v. State*, 831 So. 2d 93, 100 (Fla. 2002). Missouri law creates a class "D" felony for escape from commitment, which includes commitment pursuant to its sexually violent predator act. *See* Mo. Rev. Stat. § 575.195. Missouri courts have, nonetheless, held its sexually violent predator act to be civil in nature. *See Thomas v. State*, 74 S.W.3d 789, 790 (Mo. 2002). *In re Commitment of Fisher*, 164 S.W.3d 637 (Tex.), *cert. denied, Fisher v. Texas*, 126 S. Ct. 428, 163 L. Ed. 2d 326 (2005), involved a sexually violent

predator act that provided for outpatient civil commitment subject to many restrictions. The Texas court found that its commitment process was civil in nature, even though a separate section of the statute provided that a violation of one of the commitment requirements is a third-degree felony. In the case of *People v. Runge*, 805 N.E.2d 632, 639 (Ill. App. Ct.), *appeal denied*, 813 N.E.2d 227 (Ill. 2004), an Illinois appellate court held that the escape statute, which criminalized escape by a civilly committed person under Illinois's sexually violent predator act, did not violate constitutional equal protection guarantees. In *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003), the Supreme Court held that Alaska's sex offender registration act was civil, even though a knowing failure to comply subjects a person to criminal prosecution.

We conclude that the addition of a criminal component to the civil commitment statute does not alter the overall nature of the statute and that it remains civil, not criminal.

B. *Iowa Code section 229A.5C.* In 2002 the legislature again amended the sexually violent predator act by adding section 229A.5C. This section provides that, if a person commits a criminal offense during treatment, the treatment process will be suspended until the criminal proceedings, including any term of confinement, are complete. According to Bradford,

> [a]rguably chapter 229A is intended to serve a dual purpose: protection of the public and long-term, meaningful treatment of sex offenders. If punishment of those confined is not intended, why would the needed long-term, meaningful treatment be suspended during coexisting criminal proceedings? In either case, the person would be confined, so public safety is not at issue. Confinement under chapter 229A for treatment and confinement awaiting trial or serving a sentence is still confinement. Certainly a person may receive treatment while awaiting trial, and may receive treatment while serving a sentence of incarceration.

We disagree with Bradford's observation that "punishment of those confined is . . . intended" by this statutory amendment. If a person is "punished" under section 229A.5C, it is because he has been found guilty of a separate crime committed while confined as a sex offender. His argument that continued confinement under chapter 229A best suits the legislature's twin goals of treatment and protection of the public does not give sufficient consideration to the safety of persons confined with him. Section 229A.5C, we believe, is a rational effort to deter crimes under those conditions. We do not believe the legislature intended to forego criminal prosecution for persons committed under chapter 229A, and we find the policy reasons presented by Bradford to the contrary unpersuasive.

C. *Iowa Code section 229A.8(1).* In 2002 the legislature amended chapter 229A to add this language:

> Upon civil commitment of a person pursuant to this chapter, a rebuttable presumption exists that the commitment should continue. The presumption may be rebutted when facts exist to warrant a hearing to determine whether a committed person no longer suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses if discharged, or the committed person is suitable for placement in a transitional release program.

Iowa Code § 229A.8(1).

Bradford argues that this amendment, like those previously discussed, criminalizes commitments and shows an intent by the legislature to shift the emphasis of chapter 229A from civil to criminal. He contends that "the legislature has shifted accountability for the continued confinement to the confined person." He argues that,

> [r]ather than confining a committed person until they are no longer a threat, and requiring the state to justify such confinement on a periodic basis, chapter 229A now requires the person to be held until he can prove he is entitled to an

opportunity to make the state justify his continued confinement.

Bradford overstates the extent of the burden imposed on him by this statute. He is not required to prove he is entitled to discharge, or even that he is entitled to a hearing; he is required only to show some facts exist to warrant a hearing on the need for continued confinement.

The legislature has provided no rationale for this amendment, but we believe it is likely based on the very practical assumption that, unless there is *some* evidence of improvement sufficient to trigger a hearing, the State, which has already proven the need for confinement beyond a reasonable doubt, need not repeatedly prove its case. A committed person still has the right to "have a current examination of the person's mental abnormality made once every year," Iowa Code § 229A.8(2), and an "annual report shall be provided to the court that committed the person under this chapter." Iowa Code § 229A.8(3).

According to Bradford's argument, the effect of the 2002 rebuttable presumption amendment is to alter the purpose and effect of chapter 229A to make it punitive, since the confinement is no longer linked to the stated purpose of the commitment, which is " 'to hold the person until his mental abnormality no longer causes him to be a threat to others.' " *Garren*, 620 N.W.2d at 280 (quoting *Hendricks*, 521 U.S. at 363, 117 S. Ct. at 2083, 138 L. Ed. 2d at 516). We disagree. The amendment still shows an intent to hold committed persons only as long as necessary—until they are no longer a threat to others. A committed person may petition the court for discharge or placement in a transitional release program at the annual review provided by Iowa Code section 229A.8(4). If the person shows by a preponderance of the evidence that a final hearing should be held concerning his condition, the court must set a hearing within sixty days.

Iowa Code § 229A.8(5)(*e*). At the final hearing, the State must show the need for continued confinement by proof beyond a reasonable doubt. Iowa Code § 229A.8(6)(*d*). The burden is to show that the person's mental abnormality remains such that he is likely to commit sexually predatory acts if discharged or placed in a transitional program. Iowa Code § 229A.8(6)(*d*)(1), (2). We conclude that section 229A.8(1) does not shift the burden of proof on confinement to the committed person and does not evidence an intent to criminalize chapter 229A.

D. *Iowa Code section 901A.2(6).* Iowa Code section 901A.2(6), enacted in 2002, is also claimed by Bradford to evidence an intent to transform sexually violent predator commitments into criminal cases. Under this section, if a person who has been placed in a transitional release program or discharged pursuant to chapter 229A is subsequently convicted of a sexually predatory or sexually violent offense, he shall be sentenced to life imprisonment (with or without the possibility of parole, depending on whether the subsequent offense is greater than a misdemeanor). Bradford argues that this new provision, which in itself is obviously criminal in nature, changes the nature of the entire chapter from civil to criminal.

Section 901A.2(6) changes the effect that a commitment under chapter 229A may have in the future, but that does not alter chapter 229A itself. To be sentenced in accordance with section 901A.2(6), a person must have committed a new sexually violent or predatory offense. At this point, the goals of retribution and deterrence are appropriate, and Bradford does not argue otherwise. The enactment of this section, however, does not make an original commitment under chapter 229A criminal in nature.

**IV. *Conclusion.***

We conclude that none of the amendments discussed make chapter 229A punitive in nature; therefore, ex post facto and double jeopardy

protections do not apply.  Bradford has not shown, by the "clearest proof," that the statute is now punitive and has not offered any persuasive reasons why this court should depart from its contrary conclusion in *Garren*.  We therefore affirm.

**AFFIRMED.**